IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BEVERLY SCHELSTEDER and        §
KENNETH SCHELSTEDER,           §
                               §
          Plaintiffs,          §
                               §
v.                             §        CIVIL ACTION NO. H-05-0941
                               §
MONTGOMERY COUNTY, TEXAS,      §
GUY WILLIAMS, RAY ZAVADIL,     §
and RICKY STAGGS,              §
                               §
          Defendants.          §

MEMORANDUM AND ORDER

Pending is Defendants Montgomery County, Texas, Guy Williams, Ray Zavadil, and Ricky Staggs's Third Motion to Dismiss for Failure to State a Claim, and Alternative Motion for Summary Judgment (Document No. 22).  After having carefully reviewed the motion, responses, and the applicable law, the Court concludes as follows:

I.   Background

Plaintiffs and spouses Kenneth Schelsteder ("Mr. Schelsteder") and Beverly Schelsteder ("Mrs. Schelsteder") (collectively, "Plaintiffs") bring this 42 U.S.C. § 1983 action against Montgomery County, Texas (the "County"), County Sheriff Guy Williams ("Williams"), Deputy Constable Ray Zavadil ("Zavadil"), and Deputy Sheriff Ricky Staggs ("Staggs") (collectively, "Defendants"). Plaintiffs allege that Defendants violated their constitutional rights to be free from unlawful arrest and unreasonable seizure,

Mr. Schelsteder also alleges an Eighth Amendment claim of cruel and unusual punishment, and Mrs. Schelsteder also alleges an excessive force claim.

Plaintiffs operated a tent booth at the Montgomery County Fairgrounds Barbeque Cook Off.  Around midnight on April 5, 2003, Defendant Deputy Sheriff Staggs approached the booth and told everyone in the tent to leave immediately unless they were spending the night.[1]   Document No. 20 ¶ 6.  When one occupant informed Staggs that people were still packing their equipment and that the tent needed straightening, Staggs allegedly stepped into close proximity with the occupant, belligerently stated that the group was not moving fast enough, and ordered the occupant to start walking toward the gate immediately.  Id.  Another occupant told Staggs that some of the ladies in the tent needed an opportunity to gather their belongings.  Id.

Mr. Schelsteder, who is a retired Harris County Deputy Constable, emerged from the back of the tent and asked what the problem was, but Staggs informed him that it was "none of [his] damn business."  Id. exs. G, H.  Mr. Schelsteder explained that he was a Cook Off team member, and that he would like to know if there was a problem so that he could help solve it.  Id.  Around this

---

[1] Staggs was working an approved extra job providing security at the Cook Off that evening.  *See* Document No. 25 at 1.  All law enforcement personnel, including Staggs, had been instructed to clear out the crowd at the close of the Cook Off so the gates could be locked.  *See* id.

time, ten to fifteen additional officers arrived on the scene.  Id. ex. H.  According to Plaintiffs, Mr. Schelsteder began to walk away, but Staggs called him back, accused him of using profanity, and requested his identification.  Id. ex. G.  Mr. Schelsteder denied using profanity and said he had "more respect then [sic] that" because he had been a police officer for twenty-five years. Id.  Staggs and three or four other officers surrounded Mr. Schelsteder and "thr[ew] question after question at me and I tried to explain to the officers that I was a retired deputy."  Id. Staggs then placed Mr. Schelsteder under arrest and handcuffed him in view of the other occupants of the tent, including Mrs. Schelsteder and the couple's children.  See id. exs. G, H; see also Document No. 25 at 2.  Mr. Schelsteder was charged with public intoxication.[2]

---

[2] The summary judgment evidence is controverted on whether Mr. Schelsteder was administered a field sobriety or horizontal gaze nystagmus test ("HGN test") before he was arrested.  Mr. Schel-steder denies that either test was administered, but Sheriff's Deputy Chris Rogers ("Rogers"), another officer on the scene, states that he performed an HGN test on Mr. Schelsteder and "found all six clues present indicating he was intoxicated." See Document No. 24 at 2.  The evidence must be viewed on summary judgment in the light most favorable to Plaintiffs, i.e., that no field sobriety test or HGN test was administered to Mr. Schelsteder. Nonetheless, the uncontroverted summary judgment is that when Rogers and Staggs observed Mr. Schelsteder, he had slurred speech, unsteady balance, and strongly smelled of alcohol.  Id.; Document No. 25 at 1.  Staggs avers that Mr. Schelsteder had bloodshot eyes and "had a dark stain in the area of his zipper and it appeared to me that he had urinated in his pants."  Document No. 25.  Rogers avers that Mr. Schelsteder twice refused the officers' instructions to go inside the tent, and "[a]t that point, Detective Staggs, took the man into custody for public intoxication."  Document No. 24 at 2.

When arrested, Mr. Schelsteder, who was then 56 years old and suffers from diabetes and heart problems for which he takes medication, explained that he was in bad health and asked the officers to look at his diabetes card, but they did not.  <u>Id.</u> ex. G.  As Staggs and the other officers began walking Mr. Schelsteder uphill to the security office, which was approximately a ten-minute walk, Mr. Schelsteder asked the officers to transport him in a golf cart that was on the scene, but "they told me they had no respect for Harris County officers and that I could walk it."  <u>Id.</u>  Mr. Schelsteder was thereafter taken to jail, detained overnight, and released the following morning after a hearing. Document No. 20 ¶ 10.

Mrs. Schelsteder, who witnessed her husband's arrest as she was leaving the area, began to walk toward her husband, but Deputy Constable Zavadil "pushed me back by placing his hand on my right shoulder."  Document No. 34 ex. H at 1.  Mrs. Schelsteder, who was 51 years old and 5 feet 2 inches tall, attempted to tell Zavadil that Mr. Schelsteder had diabetes and a severe heart condition, and that she needed to know where they were taking him because he needed his medication.  <u>Id.</u> ex. H at 1.  According to Plaintiffs, Zavadil, without warning, violently grabbed Mrs. Schelsteder's arm, jerked it, and twisted it behind her back.  <u>Id.</u>  As a result, Mrs. Schelsteder's rotator cuff tore and she experienced severe pain in her shoulder, chest, and neck.  <u>Id.</u> exs. H at 1, O at 25.  After

4

she was handcuffed, Mrs. Schelsteder asked why she was being arrested, and Zavadil told her "public intoxication." Id. ex. H at 1. Mrs. Schelsteder, who states that she had not been drinking, asked Zavadil to administer a breathalyser or field sobriety test, but Zavadil refused and said he did not have to do so.  Id.[3]

Mrs. Schelsteder was taken to the security office of the fairgrounds, where she began to feel tightness in her chest and pain in her shoulder and neck. Id. ex. H at 1. Emergency medical services ("EMS") personnel were summoned to treat Mrs. Schelsteder's injury, but Zavadil "continued to chastise Mrs. Schelsteder with insults, accusations, and profanity while EMS was attending to her." Document No. 20 ¶ 15. Zavadil released Mrs.

---

[3] Mrs. Schelsteder was later charged with public intoxication and disorderly conduct. Zavadil and one Deputy Laura Gill, who was also present at the scene, state that Mrs. Schelsteder became "loud," "vulgar and abusive," "increasingly agitated," and "aggressive" when her husband was arrested. Document Nos. 27 and 28. Zavadil asserts that Mrs. Schelsteder ignored multiple instructions "to step back and stop cursing and screaming at the deputies," but instead "rais[ed] her arms and stepp[ed] forward towards Deputy Gill in what I felt as a threating [sic] manner," and that he restrained Mrs. Schelsteder to prevent a possible assault on Gill. Document No. 27 at 2-3.

Plaintiffs dispute the officers' version of events and aver that Mrs. Schelsteder merely asked the officers about her husband's medication before she was suddenly arrested. See Document No. 34 exs. H at 1, N at 94. Mrs. Schelsteder denies using profanity, threatening law enforcement officers, becoming physically aggressive, being told to calm down, or stepping closely toward Gill. See id. ex. O at 110-11, 113. Mrs. Schelsteder testified that the closest proximity she had to Gill prior to her arrest was approximately ten feet, "[a]nd I didn't see [Gill] until I was getting arrested." Id. at 111.

Schelsteder from custody at the scene, but he "followed her to the hospital where he continued to insult and threaten her." _Id._ Later, Mrs. Schelsteder was summoned to court by the constable's notice to appear on charges of public intoxication and disorderly conduct. _Id._ ¶ 16.  These charges were both later dropped. Document No. 34 ex. O at 115.

In their Second Amended Complaint, Plaintiffs allege that the individual Defendants violated their constitutional rights under the Fourth and Fourteenth Amendments to be free from unlawful arrest and unreasonable seizure, Mr. Schelsteder also alleges that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment, and Mrs. Schelsteder also alleges an excessive force claim.[4]  Furthermore, Plaintiffs allege that Montgomery County is liable because Plaintiffs' injuries were the result of the County's policy, practice, and custom of arresting without probable cause, allowing unreasonable seizures, administering cruel and unusual punishment, and of using excessive force. Alternatively, Plaintiffs allege that "a single decision by Sheriff Williams, the final policy maker for the county, . . . was severe

---

[4] Although Plaintiffs allege that they were "maliciously prosecuted," they do not assert this as an independent, freestanding claim, but rather as a factor in consideration of the unreasonable seizure claim. _See_ Document No. 20 § 18; Document No. 5 at 7.  The Fifth Circuit has found that no "freestanding constitutional right to be free from malicious prosecution exists." _See_ Castellano v. Fragozo, 352 F.3d 939, 944 (5th Cir. 2003) (en banc), _cert. denied_, 125 S. Ct. 31 (2004).  _See also_ Izen v. Catalina, 398 F.3d 363, 366-67 (5th Cir. 2005).

enough to amount to a policy or custom of excessive force, unlawful search and seizure, and/or cruel and unusual punishment." Plaintiffs seek damages for medical expenses, physical pain and suffering, physical impairment, mental anguish, disfigurement, and personal discomfort, annoyance, and inconvenience. Plaintiffs also seek punitive damages against the individual Defendants and attorneys' fees. Defendants have filed a third motion to dismiss for failure to state a claim and an alternative motion for summary judgment and seek dismissal of all of Plaintiffs' claims. The parties in their briefs largely ignore the Rule 12(b)(6) motion to dismiss and, relying on matters outside the pleading in the summary judgment evidence, argue the summary judgment motion.

## II.  Standard of Review

     Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to inter-rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).[5] The moving party must "demonstrate

---

[5] Plaintiffs have filed a number of witness statements that Plaintiffs' counsel characterize as "affidavits," but they are not sworn to nor are they statements made under penalty of perjury. The mere signing of a statement in the presence of a notary, or a notary's placement of an "acknowledgment" on a statement, does not constitute a *sworn* statement or affidavit. *See* <u>Nissho-Iwai Am. Corp. v. Kline</u>, 845 F.2d 1300, 1305-06 (5th Cir. 1988) (dis-

the absence of a genuine issue of material fact." <u>Celotex Corp. v.
Catrett</u>, 106 S. Ct. 2548, 2553 (1986).  Once the movant carries
this burden, the burden shifts to the nonmovant to show that
summary judgment should not be granted.  *See* <u>id.</u> at 2553-54.  A
party opposing a properly supported motion for summary judgment may
not rest upon mere allegations or denials in a pleading, and
unsubstantiated assertions that a fact issue exists will not
suffice.  *See* <u>Morris v. Covan Worldwide Moving, Inc.</u>, 144 F.3d 377,
380 (5th Cir. 1998) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.
Ct. 2505, 2514-15 (1986)).  "[T]he nonmoving party must set forth
specific facts showing the existence of a 'genuine' issue
concerning every essential component of its case."  <u>Id.</u>

In considering a motion for summary judgment, the district
court must view the evidence through the prism of the substantive
evidentiary burden.  *See* <u>Anderson</u>, 106 S. Ct. at 2513-14.  All
justifiable inferences to be drawn from the underlying facts must
be viewed in the light most favorable to the nonmoving party.  *See*
<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 106 S. Ct. 1348,
1356 (1986).  "If the record, viewed in this light, could not lead

---

regarding as summary judgment evidence a notarized, self-described
"affidavit" that was "neither sworn nor its contents stated to be
true and correct nor stated under penalty of perjury" so as to
bring unsworn statement into compliance with 28 U.S.C. § 1746).
Accordingly, the witness statements of Robert S. Juranek (Document
No. 34 ex. B), Lisa M. Gerometta (<u>id.</u> ex. C), Vincent S. Juranek
(<u>id.</u> ex. D), Richard J. Gerometta (<u>id.</u> ex. E), and Terry W. Werland
(<u>id.</u> ex. F), do not constitute summary judgment evidence under Fed.
R. Civ. P. 56(c), and are not considered on the pending motion.

a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  Id. (citing Anderson, 106 S. Ct. at 2511).  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  Anderson, 106 S. Ct. at 2513.

### III.  Discussion

### A.  Plaintiffs' Objections

As an initial matter, Plaintiffs object to two exhibits in Defendants' summary judgment evidence.  *See* Document No. 34 at 4-5. Plaintiffs' objection to Defendants' exhibit 3 (record from Justice of the Peace Precinct 2) is SUSTAINED.  Plaintiffs' objection to exhibit 4 (officer's field notes form) is OVERRULED.  *See* FED. R. EVID. 803(8); *see also* Parsons v. Honeywell, Inc., 929 F.2d 901, 907 (2d Cir. 1991) (stating that in civil trials "[i]t is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted") (quoting United States v. Pazsint, 703 F.2d 420, 424 (9th Cir. 1983)).

B.   <u>Deputy Sheriff Staggs</u>

Deputy Sheriff Staggs moves for dismissal of Mr. Schelsteder's claims against him, or alternatively, for summary judgment. Staggs contends that Mr. Schelsteder has failed to allege a violation of a constitutional right, and, even if Mr. Schelsteder has alleged such a violation, Staggs is entitled to qualified immunity. "Qualified immunity protects government officials who perform discretionary functions from liability 'unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Glenn v. City of Tyler</u>, 242 F.3d 307, 312 (5th Cir. 2001) (quoting <u>Gibson v. Rich</u>, 44 F.3d 274, 276 (5th Cir. 1995)). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." <u>McClendon v. City of Columbia</u>, 305 F.3d 314, 323 (5th Cir. 2002) (en banc), *cert. denied*, 123 S. Ct. 1355 (2003). A dual analysis is applied to qualified immunity defenses. First, a court must ask whether the plaintiff has alleged the violation of a constitutional right. <u>Brosseau v. Haugen</u>, 125 S. Ct. 596, 598 (2004). If the plaintiff has done so, the court must determine whether the defendant's conduct was "objectively reasonable in light of clearly established law at the time that the challenged conduct occurred." <u>Glenn</u>, 242 F.3d at 312. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear

10

to a reasonable officer that his conduct was unlawful in the situation he confronted." Brosseau, 125 S. Ct. at 599. "If, upon viewing the evidence in the light most favorable to the [plaintiff], reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." Haggerty v. Tex. S. Univ., 391 F.3d 653, 655 (5th Cir. 2004) (quoting Southard v. Tex. Bd. of Criminal Justice, 114 F.3d 539, 550 (5th Cir. 1997) (internal quotations omitted)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994) (quoting Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986)).

1.   Unlawful Arrest

"The Fourth Amendment requires that an arrest be supported by a properly issued arrest warrant or probable cause." Glenn v. City of Tyler, 242 F.3d 307, 313 (5th Cir. 2001). "Probable cause for a warrantless arrest exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." United States v. Watson, 273 F.3d 599, 602 (5th Cir. 2001) (quoting United States v. Wadley, 59 F.3d 510, 512 (5th Cir. 1995)). The officer need only know with "fair probability" that the suspect committed the

offense, "which requires more than a 'bare suspicion' but less than
a preponderance of the evidence." *See* id. (quoting United States
v. Garcia, 179 F.3d 265, 269 (5th Cir. 1999)). *See also* Haggerty
v. Tex. S. Univ., 391 F.3d 653, 656 (5th Cir. 2004).

Mr. Schelsteder was arrested for public intoxication. Under
Texas law, a person commits the offense of public intoxication if
he "appears in a public place while intoxicated to the degree that
[he] may endanger [himself] or another." Tex. Penal Code Ann.
§ 49.02 (Vernon 2003). The danger need not be immediate; potential
danger to oneself or others suffices to show endangerment. *See*
Loera v. State, 14 S.W.3d 464, 470 (Tex. App.--Dallas 2000, no
pet.); *see also* Dickey v. State, 552 S.W.2d 467, 468 (Tex. Crim.
App. 1977).

Staggs contends that he had probable cause to arrest Mr.
Schelsteder for public intoxication. The uncontroverted summary
judgment evidence is that when Mr. Schelsteder spoke to Deputies
Staggs and Rogers, Mr. Schelsteder's speech was slurred, he had
bloodshot eyes, he was unsteady on his feet, he "swayed as he stood
still," he had a strong odor of alcohol on his breath, and he
appeared to have urinated in his pants. *See* Document Nos. 24, 25.
Deputy Rogers avers that the officers twice asked Mr. Schelsteder
to go back inside his travel trailer, but he refused. *See* Document
No. 24 at 2. Staggs testified that he believed Mr. Schelsteder
could pose a danger to himself or others:

12

Q: What did Mr. Schelsteder do to demonstrate to you that
he was a danger to himself or to others?

A: Well, when I noticed that he was intoxicated, I felt
like that he wasn't going to go back in to where he was
spending the night.  I didn't know where he was going to
be going, what he was going to be doing.  I wasn't going
to leave him there to roam around and be injured.

Q: How were you worried about him being injured?

A: People that are intoxicated their balance is unsteady.
I didn't know what he was going to do.  He obviously
wasn't going to go back into the camp like he was
requested to do.  He was going to remain in a public
place and I wasn't going to allow that.

Document No. 34 ex. M at 58-59.  Viewing the evidence in the light

most favorable to Plaintiffs and considering the totality of

circumstances within Staggs's knowledge at the moment of arrest,

Staggs had fair probability to believe that Mr. Schelsteder was

intoxicated to the degree of potentially endangering himself or

others.  Confronted with this summary judgment evidence, Mr.

Schelsteder has failed to raise a fact issue that there was not

probable cause for his arrest and that his constitutional right was

violated.

Alternatively, even if Staggs erroneously concluded that he

had probable cause to arrest Mr. Schelsteder for public

intoxication, a reasonable officer in Staggs's position could have

believed that Mr. Schelsteder was in violation of § 49.02--and that

probable cause therefore existed for Mr. Schelsteder's arrest.  As

already observed, when Staggs arrested Mr. Schelsteder, the

13

following facts were known to Staggs:  Mr. Schelsteder had slurred speech, unsteady balance, bloodshot eyes, and strongly smelled of alcohol; he appeared to have urinated in his trousers; and he appeared to have the potential to endanger himself or others in his impaired state given the late hour and uncertainty over Mr. Schelsteder's ultimate destination.   Indeed, "'[e]ven law enforcement officials who reasonably but *mistakenly* conclude that probable cause is present are entitled to immunity.'"  <u>Haggerty</u>, 391 F.3d at 656 (quoting <u>Mendenhall v. Riser</u>, 213 F.3d 226, 230 (5th Cir. 2000)).  *See* <u>Gibson v. Rich</u>, 44 F.3d 274, 276 n.4 (5th Cir. 1995) (though suspect disputed that he had bloodshot eyes and slurred speech, "the totality of the circumstances still provided [the officer] with an objectively reasonable basis to arrest [the suspect] for public intoxication.")   Accordingly, Staggs is entitled to summary judgment on Mr. Schelsteder's unlawful arrest claim.

   2.   <u>Unreasonable Seizure</u>

   Mr. Schelsteder also asserts an unreasonable seizure claim. The Fifth Circuit has recognized a claim of unreasonable seizure where an arrest is conducted in an "extraordinary manner," which is "unusually harmful to an individual's . . . physical interests." *See* <u>Atwater v. City of Lago Vista</u>, 195 F.3d 242, 244-45 (5th Cir. 1999) (quoting <u>Whren v. United States</u>, 116 S. Ct. 1769, 1776

14

(1996)).  *See also* <u>Flores v. City of Palacios</u>, 381 F.3d 391, 403
(5th Cir. 2004); <u>Glenn v. City of Taylor</u>, 242 F.3d 307, 311, 313-14
(5th Cir. 2001).   To assert an unreasonable seizure claim, the
plaintiff must show an injury.  *See, e.g.,* <u>Atwater</u>, 195 F.3d at 246
(arrest not conducted in extraordinary manner where plaintiff
"admit[ted] that she did not suffer any physical harm during or as
a result of the arrest"); <u>Glenn</u>, 242 F.3d at 311, 314 (arrest not
extraordinary where the suspect alleged that her multiple sclerosis
was exacerbated by being left in an unventilated police car in the
"baking sun" for approximately thirty minutes, but where plaintiff
refused medical attention and denied offer to go to hospital).
Here, Mr. Schelsteder alleges that the officers denied his health-
related request to be transported to the security office in a golf
cart, but instead forced him to walk ten minutes uphill.   Mr.
Schelsteder has not alleged, however, that he suffered any injury
during or as a result of his arrest, nor has he explained how his
medical conditions were exacerbated by the ten-minute walk.  Thus,
his arrest was not conducted in an extraordinary manner and does
not amount to an unreasonable seizure.  *See* <u>Glenn</u>, 242 F.3d at
314.[6]  Staggs is entitled to summary judgment on this claim.

_____

[6] Mr. Schelsteder's allegation that he suffered cruel and
unusual punishment in violation of the Eighth Amendment also has no
merit.  "State defendants do not incur Eighth Amendment liability
unless 'the individual was being held in custody after criminal
conviction'" when the alleged constitutional violation occurred.
*See* <u>Austin v. Johnson</u>, 328 F.3d 204, 208 (5th Cir. 2003) (quoting
<u>Johnson v. City of Dallas</u>, 61 F.3d 442, 444 (5th Cir. 1995)).  *See*

## C.   Deputy Constable Zavadil

Defendant Zavadil moves for dismissal of Mrs. Schelsteder's claims against him, or alternatively, for summary judgment.  He argues that Mrs. Schelsteder has failed to allege a violation of a constitutional right, and, even if she has alleged such a violation, Zavadil is entitled to qualified immunity.

### 1.   Unlawful Arrest

Mrs. Schelsteder asserts that Zavadil violated her constitutional right to be free from unlawful arrest when he arrested her without probable cause for public intoxication. Zavadil responds that Mrs. Schelsteder was also arrested for disorderly conduct, and that he had probable cause to arrest her

---

*also* Ingraham v. Wright, 97 S. Ct. 1401, 1412 n.40 (The Eighth Amendment is implicated once the state "has secured a formal adjudication of guilt in accordance with due process of law."). Here, Mr. Schelsteder alleges that cruel and unusual punishment occurred after his arrest, but before he was transported to prison, when Staggs "forc[ed] Mr. Schelsteder to walk handcuffed to the officer's post when Officer Staggs knew that Mr. Schelsteder had medical conditions and physical impairments," despite requests to transport Mr. Schelsteder in a motorized cart that was available. *See* Document No. 20 ¶ 29(b).  However, this conduct occurred prior to a due process hearing and before any criminal conviction.  As such, the Eighth Amendment's proscription of cruel and unusual punishment was not implicated by Staggs's conduct and that claim is DISMISSED.  *See* Austin, 328 F.3d at 208-09.

for this offense.[7]   Under Texas law, a person commits disorderly conduct when, *inter alia*, she intentionally or knowingly:

> (1) uses abusive, indecent, profane, or vulgar language in a public place, and the language by its very utterance tends to incite an immediate breach of the peace;
>
> . . .
>
> (4) abuses or threatens a person in a public place in an obviously offensive manner; [or]
>
> (5) makes unreasonable noise in a public place . . .

TEX. PENAL CODE ANN. § 42.01(a) (Vernon 2003).   Plaintiffs' summary judgment evidence raises genuine issues of material fact regarding (1) Mrs. Schelsteder's demeanor and conduct prior to her arrest; and (2) the objective reasonableness of Zavadil's actions in arresting Mrs. Schelsteder for disorderly conduct.   Accordingly,

---

[7] Mrs. Schelsteder objects that Zavadil did not inform her at the scene that she was being arrested for disorderly conduct and that she did not discover she had been so charged until the next day, when she received her court summons.  However, the Supreme Court has held that "[w]hile it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required."  *See* Devenpeck v. Alford, 125 S. Ct. 588, 594 (2004) (providing that an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.").  *See also* United States v. Lopez-Moreno, 420 F.3d 420, 432 (5th Cir. 2005); United States v. Jones, 432 F.3d 34, 41 (1st Cir. 2005) ("[T]he probable cause inquiry is not necessarily based upon the offense actually invoked by the arresting officer but upon whether the facts known at the time of the arrest objectively provided probable cause to arrest.").  Thus, the relevant inquiry is whether the facts objectively known by Zavadil at the time of the arrest provided probable cause to arrest Mrs. Schelsteder.

Zavadil's motion for summary judgment with respect to Mrs.
Schelsteder's claim for unlawful arrest will be denied.

2.   <u>Excessive Force</u>

Mrs. Schelsteder also alleges that Zavadil used excessive
force when he arrested her.   To bring a § 1983 excessive force
claim under the Fourth Amendment, a plaintiff must show that she
suffered an injury that resulted directly and only from the use of
objectively unreasonable force that was clearly excessive to the
need.   *See* <u>Tarver v. City of Edna</u>, 410 F.3d 745, 751 (5th Cir.
2005); <u>Flores</u>, 381 F.3d at 396; <u>Ikerd v. Blair</u>, 101 F.3d 430, 433-
34 (5th Cir. 1996).   "In gauging the objective reasonableness of
the force used," the court "must balance the amount of force used
against the need for that force." <u>Ikerd</u>, 101 F.3d at 434.   "The
amount of force that is constitutionally permissible, therefore,
must be judged by the context in which that force is deployed."
<u>Id.</u>

It is undisputed that Mrs. Schelsteder sustained a dislocated
shoulder and torn rotator cuff during the course of her arrest.
Zavadil argues, however, that Mrs. Schelsteder has failed to show
that her injuries resulted directly and only from the use of force.
Zavadil argues that Mrs. Schelsteder may have contributed or caused
her injuries by sliding down in a chair at the security office
while the officers were writing up her charges and preparing to

18

send her to jail.  However, Mrs. Schelsteder testified in her deposition that when "Officer Zavadil grabbed [her] arm to put it behind her back," she felt a snap which caused immediate pain.  *See* Document No. 34 ex. O at 117.  Furthermore, Mrs. Schelsteder averred in her affidavit that she began to slump in her chair at the officer's station *because* she "felt a tightness in my chest and pain going from my shoulder into my neck."  *See* <u>id.</u> ex. H at 1.  This summary judgment evidence suggests that Mrs. Schelsteder suffered a dislocated shoulder and torn rotator cuff as a result of Zavadil's actions in arresting her.  *See* <u>Goodson v. City of Corpus Christi</u>, 202 F.3d 730, 740 (5th Cir. 2000).

Zavadil next argues that the amount of force used was objectively reasonable because Mrs. Schelsteder "was belligerent and threatening towards the officers, which would justify Zavadil's restraint of her."  Plaintiffs' summary judgment evidence, however, is that Mrs. Schelsteder merely approached the officers to warn them of her husband's bad health and to ask how to deliver his medication to him, when Zavadil suddenly and violently restrained her by jerking her right arm behind her back.  Given the conflicting evidence about Mrs. Schelsteder's conduct prior to her arrest, a fact issue exists as to the objective reasonableness of

the force used.  Accordingly, Zavadil's motion for summary judgment on Mrs. Schelsteder's claim for excessive force will be denied.[8]

D.    The County and Williams's Motion for Summary Judgment

    1.    Mr. Schelsteder's Claims

The County and Sheriff Williams have moved for summary judgment as to Mr. Schelsteder's claims, arguing, *inter alia*, that because Mr. Schelsteder cannot show that Staggs's actions violated any of Mr. Schelsteder's constitutional rights, Mr. Schelsteder's municipal and supervisory liability claims fail as a matter of law. The County and Williams are correct.  *See* Mace v. City of Palestine, 333 F.3d 621, 625 (5th Cir. 2003) (citing City of Los Angeles v. Heller, 106 S. Ct. 1571, 1573 (1986)); Saenz v. Heldenfels Bros., Inc., 183 F.3d 389, 392-93 (5th Cir. 1999); Roberts v. City of Shreveport, 397 F.3d 287, 292 (5th Cir. 2005); Wilson v. Johnson, 129 Fed. Appx. 116 (5th Cir. Apr. 27, 2005) (unpublished). Because Staggs did not violate Mr. Schelsteder's constitutional rights, the County's and Williams's motion for summary judgment will be granted as to Mr. Schelsteder's claims.

---

[8] To the extent that Mrs. Schelsteder also asserts an unreasonable seizure claim, she has failed to adduce evidence of any injuries arising out of her arrest that are not "identical to those in support of her excessive use of force claim." *See* Flores, 381 F.3d at 403.  As such, it appears that this claim "is just her excessive force claim restated," and the unreasonable seizure claim is subsumed in the excessive force claim.

2.   Mrs. Schelsteder's Claims

Mrs. Schelsteder conclusorily alleges that the County has policies, customs, or procedures that resulted in the violation of her rights to be free from unlawful arrest, unreasonable seizure, and excessive force.[9]  A municipality can be held liable under § 1983 only when the municipality itself causes a constitutional deprivation.  *See* City of Canton v. Harris, 109 S. Ct. 1197, 1203 (1989); Monell v. Dept. of Soc. Servs., 98 S. Ct. 2018, 2037-38 (1978).  This requires the execution of an official city policy or custom which results in the injury made the basis of the § 1983 claim.  Bd. of County Comm'rs v. Brown, 117 S. Ct. 1382, 1388 (1997); Monell, 98 S. Ct. at 2035-36.  Proof of municipal liability sufficient to satisfy Monell requires: (1) an official policy or

---

[9] Plaintiffs allege that a "single decision" by Williams, "as the final policy maker," was "severe enough to amount to a policy or custom" of unreasonable seizure and excessive force.  This allegation goes to the liability of Montgomery County, not Williams's liability individually.  *See* Brady v. Fort Bend County, 145 F.3d 691, 698 (5th Cir. 1998) ("[A] single action by a municipal official possessing final policymaking authority regarding the action in question constitutes the official policy of the municipality").  Furthermore, with respect to supervisory liability, "[a] sheriff not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under section 1983 only if: 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."  Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001).  Plaintiffs provide no evidence to support a theory of supervisory liability.  Williams's motion for summary judgment will thereby be granted.

custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.   Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002).   A high standard of proof is required before a municipality can be held liable under § 1983.   See Snyder v. Trepagnier, 142 F.3d 791, 796 (5th Cir. 1998); see also Brown, 117 S. Ct. at 1394 ("Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability [inappropriately] collapses into respondeat superior liability"); Canton, 109 S. Ct. at 1208 (stating that § 1983 liability should not be imposed absent a showing of "a high degree of fault on the part of city officials" (O'Connor, J., concurring)).

For purposes of municipal liability, an official policy may be (1) a policy statement, ordinance, regulation or decision, or (2) "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted or promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." Spiller v. City of Texas City, 130 F.3d 162, 167 (5th Cir. 1997). Here, Plaintiffs do not identify an

official written policy sanctioning unlawful arrests, unreasonable seizures, or excessive force.  Nor do Plaintiffs provide specific facts or evidence supporting a custom or "persistent, widespread practice" that was the moving force behind the constitutional violations alleged against Zavadil by Mrs. Schelsteder.  Given the conclusory nature of Mrs. Schelsteder's allegations of municipal liability, the County's motion for summary judgment will be granted.

## IV.  <u>Order</u>

Accordingly, it is

ORDERED that Defendants Montgomery County, Texas, Guy Williams, Ray Zavadil, and Ricky Staggs's Third Motion to Dismiss for Failure to State a Claim, and Alternative Motion for Summary Judgment (Document No. 22) is GRANTED in PART as follows: summary judgment is GRANTED as to Plaintiff Kenneth Schelsteder's claims against Defendant Deputy Sheriff Ricky Staggs, and all claims against Staggs are DISMISSED; summary judgment is GRANTED on Plaintiffs Kenneth and Beverly Schelsteder's claims against Defendant County Sheriff Guy Williams and Montgomery County, Texas, and all claims against Williams and Montgomery County are DISMISSED; and Defendants' motion is otherwise DENIED.  Remaining for trial are Plaintiff Beverly Schelsteder's § 1983 unlawful

arrest and excessive force claims against Defendant Deputy Constable Ray Zavadil.

The Clerk shall notify all parties and provide them with a signed copy of this Order.

SIGNED at Houston, Texas, on this 21st day of April, 2006.


EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE